IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN PIERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-312 |
| | ) | |
| GREGORY J. BARRO, PLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This Fair Debt Collection Practices Act ("FDCPA") case is before the court on plaintiff's motion for costs and attorney fees [doc. 5]. Defendant has responded in partial opposition [doc. 7]. For the reasons that follow, plaintiff's motion will be granted in part.

I.

*Background*

Plaintiff filed his complaint on July 6, 2011, alleging multiple violations of the FDCPA stemming from two debt collection communications. Before an answer was even filed, on August 9, 2011, defendant served an offer of judgment pursuant to Federal Rule of Civil Procedure 68. On August 24, 2011, plaintiff filed a notice of acceptance of the offer of judgment. In material part, defendant's offer was

> in the amount of $750.00, which includes all actual, statutory, exemplary and punitive damages requested or suffered by Defendant [sic] herein, plus any attorney's fees and costs as agreed upon by the parties or if not agreed upon by the parties then [as] proven to the Court's reasonable satisfaction at a date set by the Court.

The parties were unable to agree on reasonable costs and attorney fees, resulting in the present motion.

II

*Relevant Authority*

The FDCPA provides in material part that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable [for] . . . the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In determining what fee is reasonable, the court must begin its analysis with what is termed the "lodestar" - reasonable hours multiplied by a reasonable rate. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433.

"The amount of the fee, of course, must be determined on the facts of each case." *Id.* at 429. The *Hensley* Court identified 12 factors relevant both to the determination of the lodestar and to any subsequent upward or downward adjustments that might be

2

necessary. *Id.* at 430 n.3, 434 n.9. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n.3.

"A request for attorney's fees should not result in a second major litigation." *Id.* at 437. In *Coulter v. Tennessee*, the Sixth Circuit Court of Appeals discussed the Congressional intent underlying more than 130 fee-shifting statutes, including the FDCPA. 805 F.2d 146, 148-49 n.2, 153 (6th Cir. 1986).

> Congress intended to provide an economic incentive for the legal profession to try meritorious cases defining and enforcing statutory policies and constitutional rights in a variety of fields of legal practice. Congress did not intend that lawyers, already a relatively well off professional class, receive excess compensation or incentives beyond the amount necessary to cause competent legal work to be performed in these fields. Legislative history speaks of "fees which are adequate to attract competent counsel, but which do not produce windfalls," . . . and cautions against allowing the statute to be used as a "relief fund for lawyers" . . . .

*Id.* at 148-49 (citations omitted). In other words, courts should be mindful of cases in which attorney fees are "the engine . . . powering the case," *Carroll v. United Compucred Collections*, No. 1:99-00152, 2008 WL 3001595, at *4 n.4 (M.D. Tenn. July 31, 2008), and "the fee petition tail should not be allowed to wag the dog." *Career Agents Network v. careeragentsnetwork.biz*, 722 F. Supp. 2d 814, 825 (E.D. Mich. 2010).

Further, "hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter*, 805 F.2d at 149. The relevant market is the venue in which the court sits. *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

III.

*Attorney Fees*

Plaintiff's case was staffed by three attorneys, two law clerks, and two paralegals. Those persons, and their sought-after hourly rates, are as follows: attorney (associate) Amy Bennecoff, $300.00; attorney (partner) Craig Kimmel, $425.00; attorney (associate) Angela Troccoli, $300.00; law clerk Doher Ferris, $180.00; law clerk Jacob Ginsburg, $180.00; paralegal Dawn Grob, $165.00; and paralegal Jason Ryan, $155.00.

In addition to $350.00 in costs, plaintiff seeks $4,765.00 in attorney and support staff fees. That total is based on 8.1 attorney hours and 7.0 support staff hours through the date of the filing of the acceptance of the offer of judgment, and 3.7 attorney hours (and no support staff time) after the filing of the acceptance of the offer of judgment. The court will now consider plaintiff's fee request in light of the 12 *Hensley* factors.

A. <u>Time and Labor Required</u>

The court first notes that this case settled very early. This fact impacts the amount of work legitimately and reasonably required. For example, plaintiff's billing statement includes 0.3 hours of law clerk time on August 4, 2011, for "Draft Interrogatories,

4

Production Requests and Rule 26 Disclosures." On that date, however, the complaint had not even been answered (nor was an answer ever filed). These 0.3 hours were premature, unnecessary, unreasonable, and will be stricken.

Next, the court shares defendant's concern that there was a degree of redundancy and/or overstaffing on this case. Plaintiff's briefing touts the "extensive experience . . . reputation, and ability" of her three "accomplished consumer law practitioner[s]." [Doc. 5, ex. 1, p. 15, 33]. As to attorney Bennecoff specifically, the court is informed that she "has represented hundreds of consumers . . . specifically in the field of plaintiff's consumer litigation . . . . She has arbitrated, tried, and settled hundreds of consumer related claims . . . ." [Doc. 5, ex. 1, p. 16]. Regarding attorney Bennecoff's role in the instant case, plaintiff represents that

> Ms. Bennecoff handled Plaintiff's claim from initial client interview and evaluation and maintained direct day-to-day direct control over its prosecution. For tasks that were better and more efficiently handled *by staff*, Ms. Bennecoff called upon them to assist her. . . . Upon receipt of the Offer of Judgment, Ms. Bennecoff reviewed the document, and counseled Plaintiff to consider his response. . . .
>
> . . .
>
> . . . Ms. Bennecoff's years of experience permit her to review facts initially provided by the client and quickly ascertain what additional documents or information are necessary to form a claim under the FDCPA. She then gathers these documents and performs the requisite research to determine whether the client has a viable claim. It is this skill set that sets her and her firm apart from other practitioners.

[Doc. 5, ex. 1, p. 12-14] (emphasis added).

The court has before it no reason to question attorney Bennecoff's skills and experience. What is problematic, however, is the involvement of attorneys Troccoli and Kimmel in this case. Why an attorney of Ms. Bennecoff's purportedly extraordinary standing would need the assistance of other attorneys in the firm is not explained to the court's satisfaction.

The court observes that attorney Troccoli (who bills at the same hourly rate as, and touts similar qualifications to, attorney Bennecoff) stepped in to draft the complaint. That fact in and of itself is fine, because only one of the attorneys is billing for that actual work. What the court cannot countenance is time billed for email correspondence between the two attorneys on June 6, 14, and 15 assigning, and discussing the status of, the draft complaint. Similarly disturbing is: time billed on June 22 for emailing the complaint between the two attorneys; time billed on June 24 by Ms. Bennecoff for "review[ing] and revis[ing] the complaint;" and time billed on August 12 for emails between attorneys Bennecoff and Kimmel regarding fees and the offer of judgment.

The court recognizes that "the mere fact that attorneys confer with one another does not automatically constitute duplication of efforts." *Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at *8 (6th Cir. Jan. 31, 2000). However, it is wholly unexplained why an attorney of Ms. Bennecoff's experience and ability, who purportedly "handled Plaintiff's claim from initial client interview and evaluation and maintained direct day-to-day direct control over its prosecution," would need these interactions with co-counsel on such

6

apparently routine matters. On the record before the court, it would be unreasonable to require that defendant pay for these attorney communications.

"Cases may be overstaffed," *Hensley*, 461 U.S. at 434, and this appears to some extent to be one such case. It is plaintiff's burden to document "the appropriate hours expended and hourly rates." *Id.* at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

With the exception of attorney Trocolli's drafting of the complaint, plaintiff has not met her burden of documenting the necessity of the specific hours discussed three paragraphs above. Those hours, totaling 1.8, will therefore be stricken entirely. Plaintiff's sought-after attorney hours through the date of the filing of the acceptance of the offer of judgment will be reduced to 6.3 (8.1 minus 1.8) and her requested support staff hours will be reduced to 6.7 (7.0 minus 0.3).[1]

### B. Novelty and Difficulty of the Questions Presented

Again, this case settled very early. As such, it is impossible for the court to know whether novel and/or difficult issues were presented. This factor therefore does not weigh in favor of either party.

---

[1] As noted, plaintiffs seek a higher hourly rate for attorney Kimmel than for attorneys Bennecoff and Troccoli. The court has now struck the only time billed by attorney Kimmel prior to the filing of the acceptance of the offer of judgment, so the issue of his higher fee is now moot. In a later section of this opinion, the court will address the issue of attorney fees accrued *after* the filing of the acceptance of the offer of judgment.

7

### C. Skill Required to Perform the Legal Service Properly

The court recognizes that the FDCPA is a specialized area of the law. Conversely, the court again notes that the offer of judgment was served before an answer was even filed, meaning that the case never reached any complicated stage of litigation. The "skill required" factor does not significantly weigh in favor of either party.

### D. Preclusion of Employment by the Attorney Due to Acceptance of This Case

Plaintiff's counsel makes only the conclusory argument that "time spent on this case could have been devoted to other matters." The court finds that the "preclusion" factor has no bearing on this case.

### E. The Customary Fee

In their affidavits, plaintiff's three attorneys state that their "present billing rates" ($300.00, $300.00, and $425.00) are "fair, reasonable, market rate[s] for an attorney of similar credentials and experience in consumer credit matters *in this District*." [Doc. 5, ex. 4] (emphasis added). Counsel's opinion as to a "fair, reasonable, market rate" in their district is, however, irrelevant because "this District" for those attorneys is Pennsylvania and/or Connecticut. The relevant market rate in this case is the rate in the venue in which the court sits. *See Adcock-Ladd*, 227 F.3d at 350. That venue is the Eastern District of Tennessee, not Connecticut or Pennsylvania.

8

F. <u>Fixed or Contingent Fee</u>

Counsel's representation of plaintiff in this case is on a contingency fee basis. As such, their compensation will come from the amount determined by the court.

G. <u>Time Limits Imposed by the Client or the Circumstances</u>

Plaintiff's attorneys make no persuasive argument that unusual time limitations were imposed by the client or by the circumstances of this case. The court finds that the "time limits" factor has no bearing on this matter.

H. <u>The Amount Involved and the Results Obtained</u>

Plaintiff prevailed on his claim against the defendant, settling for $750.00. The statutory damage cap is $1,000.00. *See* 15 U.S.C. § 1692k(a)(2)(A).

The *Hensley* Court made clear that the degree of success achieved is "the most critical factor." *Hensley*, 461 U.S. at 436. However, attorney fees should not be limited by the relatively minor sum recovered by plaintiff. *See Purtle v. Eldridge Auto Sales*, 91 F.3d 797, 802 (6th Cir. 1996).

I. <u>Experience, Reputation, and Ability of the Attorney</u>

As noted, plaintiff's attorneys claim tremendous ability, experience, and accomplishments. Defendant does not contest that plaintiff is represented by competent FDCPA counsel. This factor therefore weighs somewhat in plaintiff's favor.

9

### J. Undesirability of the Case

Plaintiff argues that FDCPA cases are "undesirable." The court, however, notes a *dramatic* increase in the number of FDCPA filings on its docket in the past year. There is, in this district, no shortage of FDCPA claims or of lawyers willing to file them. The court therefore cannot conclude that FDCPA cases are "undesirable."

### K. Nature and Length of the Professional Relationship with the Client

Nothing in the record indicates that the three attorneys' professional relationship with plaintiff was extraordinarily lengthy or involved. This factor has no bearing herein.

### L. Awards in Similar Cases

"Rates from prior cases can . . . provide some inferential evidence of what a market rate is . . . but themselves do not set the rate." *B&G Mining v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008). Plaintiff's briefing directs the court's attention to fees previously awarded by courts in Florida, Delaware, Minnesota, New York, Ohio, and Pennsylvania. Plaintiff is again reminded, however, that the pertinent market in this case is the Eastern District of Tennessee.

Plaintiff has also submitted: the "Consumer Law Attorney Fee Survey 2007"; the "Laffey Matrix"; and "A nationwide sampling of law firm billing rates" from *The National Law Journal*. The court has reviewed those documents and has considered them. "[S]urveys of rates provide evidence of a market rate, but themselves do not set the rate."

10

*B&G Mining*, 522 F.3d at 664.  Plaintiff has also submitted the "Certification of Nicholas Bontrager," a FDCPA attorney who practices in California, Colorado, Illinois, and Florida. The court has reviewed Mr. Bontrager's certification and finds it to have no relevance to the issue of the reasonable market rate in this venue.

Lastly, the defense has submitted two affidavits.  One is from its attorney of record, Frank Vettori, and the other is from another experienced Knoxville lawyer, Robert Watson.  Collectively, those affiants state that, in their experience, reasonable hourly rates in this market are between $150.00 and $250.00 for attorneys, and $100.00 to $125.00 for paralegals.

Neither party, however, directs the court's attention to any recent case in which an FDCPA lodestar has been litigated in this district, and the court's research has uncovered none.  For comparison purposes, the court's research reveals the following recent fee cases, none of which involve a disputed FDCPA hourly rate:

> 1. *Williams v. Portfolio Recovery Assocs.*, No. 1:11-CV-156, an FDCPA case from the Chattanooga division (involving the instant plaintiff's counsel) *in which the parties agreed* (in early 2012) to fee rates of $192.00 per hour for associates, $270.00 per hour for partners, and $142 per hour for law clerks and paralegals.
>
> 2. *Hance v. Norfolk S. Ry.*, 3:04-CV-160, 2007 WL 3046355, at *3 (E.D. Tenn. Oct. 16, 2007), a *civil rights* case from the Knoxville division in which Judge Phillips and Magistrate Judge Guyton determined that a rate of $250.00 per hour was reasonable on the facts of that case.

11

3. *Doherty v. Maryville*, No. 3:07-CV-157, slip op. at 13 (E.D. Tenn. Sept. 30, 2009), a *civil rights* case from the Knoxville division in which Judge Varlan determined that rates of $175.00 per hour for associates and $225.00 per hour for partners were reasonable.

4. *Brooks v. Invista*, 528 F. Supp. 2d 785, 790 (E.D. Tenn. 2007), a *civil rights* case from the Chattanooga division in which Chief Judge Collier determined that an hourly rate of $239.50 was reasonable "in [that] type of case."

5. *McKay v. Reliance Standard Life Ins.*, 654 F. Supp. 2d 731, 739-40 (E.D. Tenn. 2009), an ERISA case from the Chattanooga division in which Chief Judge Collier found reasonable the *undisputed* hourly rates of $250.00 for attorneys and $90.00 for paralegals.

Due to the paucity of authority regarding local FDCPA fee litigation, most of the cases cited herein have been ERISA or civil rights matters. It is the court's experience that FDCPA cases are not as complex or as conceptually difficult as those brought under ERISA or the civil rights laws. *See, e.g., Hensley*, 461 U.S. at 436 ("[C]omplex civil rights litigation involv[es] numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services.").

The court simply cannot conclude that FDCPA fee rates should be as high as rates approved in ERISA or civil rights cases. Based on the limited evidence and authority presented in *this* case, and having considered the twelve factors set forth in *Hensley*, the court concludes that an hourly attorney fee range of $175.00 to $225.00 is appropriate.

## M. Conclusion

In determining the reasonable rates to be awarded in this case, the court has again considered the 12 *Hensley* factors as discussed above. This case appears to have been

12

a relatively straightforward FDCPA matter that settled in its earliest stages.

For all the reasons discussed herein, the court concludes that the reasonable market rates for the attorney and support staff work done in this case are $200.00 and $110.00 per hour, respectively. As determined above, the reasonable hours for work done through the date of the filing of the acceptance of the offer of judgment are 6.3 for attorneys and 6.7 for support staff. Plaintiff is reasonably entitled to fees in the amount of $1,260.00 for attorney work ($200.00 hourly rate multiplied by 6.3 hours) and $737.00 for support staff work ($110.00 hourly rate multiplied by 6.7 hours), for a total of $1,997.00.

IV.

*"Fees for Fees"*

Plaintiff's billing statement also lists work performed after the date of the filing of the acceptance of the offer of judgment. Those hours were expended documenting and pursuing the attorney fee award.

Defendant "objects to plaintiff attempting to charge it for preparing a fee petition to obtain payment of fees alleged to have been incurred." However, because defendant offers no argumentation whatsoever on that point, the objection is deemed waived.

When parties litigate the issue of attorney fees, the additional fees generated by that litigation are termed "fees for fees." *See, e.g., Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 502 (6th Cir. 2006). Fees for fees are recoverable, but not without limitation. *See Coulter v. Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986). In *Coulter*, the

13

Sixth Circuit provided the following "guidelines and limitations":

> In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary. Such guidelines and limitations are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.

*Id.* Inexplicably, neither party in this case cited the court to *Coulter's* binding authority.

"Unusual circumstances" warranting a departure from *Coulter's* "guidelines and limitations" are found, for example, where a case involves otherwise noncompensable work at the administrative level, or where fee litigation is protracted by the opposing party's "insincere" tactics. *See Moore v. Crestwood Local Sch. Dist.*, 804 F. Supp. 960, 969-70 (N.D. Ohio 1992). The court finds no unusual circumstances in the present case.[2] The court concludes that plaintiff is entitled to "fees for fees" in the amount of $59.91 ($1,997.00 fee award in the main case, multiplied by 3%).

V.

*Costs*

Plaintiff seeks $350.00 in costs, representing the filing fee paid to this court. The request is reasonable and will be granted.

---

[2] If anything, the court considered a *downward* adjustment for plaintiff's failure to acknowledge *Coulter*.

14

## VI.

*Conclusion*

For the reasons provided herein, plaintiff's motion for attorney fees and costs [doc. 5] is **GRANTED IN PART**. Plaintiff will be awarded fees in the amount of $2,056.91, and costs in the amount of $350.00. An order consistent with this opinion will be entered.

ENTER:

                                                  s/ Leon Jordan
                                      United States District Judge